# UNITED STATES DISTRICT COURT
## DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>vs.<br><br>KEENAN WELDON SMITH,<br><br>       Defendant. | No. 3:18-cr-00112 TMB-DMS<br><br>**FINAL REPORT AND RECOMMENDATION REGARDING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE [Doc. 29]** |

## I. MOTION PRESENTED

Defendant Kennan Smith has been charged as a felon in possession of a firearm and ammunition. (Doc. 2.) In this motion, Smith seeks to suppress evidence seized pursuant to state-issued search warrants 3AN-18-863 SW and 3AN-18-883 SW. The first of these warrants allowed police to search Mr. Smith's room at the Arctic Tern Inn, which led to seizure of a Colt revolver, various types of ammunition, several cell phones, and a SIM Card. (Docs. 29, 34.) The second of these warrants authorized forensic analysis of the recovered cell phones and SIM card. *Id.*

In his motion, Defendant Smith asserts that neither search warrant was supported by probable cause and thus all evidence obtained from the two searches should be suppressed. (Doc. 29.)

The government opposes the motion (Doc. 34) arguing, first, that ample probable cause supports issuance of the warrants and, secondly, that the

exclusionary rule does not apply because law enforcement relied on the warrants in good faith.

The opportunity for presentation of evidence was provided during a hearing held on January 14, 2019. Neither party called witnesses. Oral argument followed. (Tr. at Doc. 50.)

## II. FACTS REGARDING THE SEARCH WARRANTS

### A. Warrant 3AN-18-863 SW

On March 20, 2018, Sgt. Mike Ingram of the Alaska State Troopers (AST) applied for and received warrant 3AN-18-863 SW to search Defendant Smith's residence at the Arctic Tern Inn. (Doc. 29-1 at 5, 11.) The warrant also authorized the search of two vehicles parked outside the room: a black Subaru Legacy sedan and a blue Oldsmobile Intrigue sedan. (Doc. 29-1 at 5.) In support of the application, Sgt. Ingram's affidavit described information that AST had received from three tipsters, two of whom were anonymous and the third unnamed. The affidavit also described subsequent surveillance conducted in an attempt to verify the tipster's information.

### 1. First Anonymous Tipster

The first tipster anonymously reported information to Anchorage Crime Stoppers on February 17, 2018. (Doc. 29-1 at 7) stating that a black male identified as "Keenan" was involved with crack cocaine and heroin distribution and in possession of two fire arms. *Id.* at 7.

*United States v. Smith*
3:18-cr-00112-TMB-DMS
Final Report and Recommendation re Motion to Suppress                                                    2
Case 3:18-cr-00112-TMB-KFR   Document 56   Filed 03/06/19   Page 2 of 17

The tipster continued to call Crime Stoppers to provide additional details through March 1, 2018. (Doc. 29-1 at 7.) The tipster claimed knowledge that "Keenan" had an active warrant out for his arrest to serve five days in jail, although the tipster claimed no knowledge of the alleged crime which resulted in the warrant. *Id.* at 7. The caller described "Keenan's" physical appearance as mid-to-late 40s, approximately 5'6" tall, weighing under 160 lbs., with short brown hair and no facial hair. *Id.* The tipster provided two cell phone numbers for "Keenan"—907-717-8757 and 907-231-9423—and stated that he lived at the Arctic Tern Inn, in room #116. *Id.* The caller also reported that "Keenan" used a non-operational black car with a broken rear window for his operation, selling drugs in "little baggies" to buyers with whom he was familiar. (Doc. 29-1 at 7.) The tipster additionally stated that "Keenan" sometimes used a blue Oldsmobile Alero for his operation and provided a license plate number. *Id.* Finally, the tipster said that "Keenan" sometimes used female runners to help him sell drugs and gave the name of "Tayla Jones" as one runner. *Id.*

Sgt. Ingram's affidavit does not provide any information about the basis of the tipster's knowledge, for example, whether it was first-hand knowledge. The affidavit does, however, report the information collected and steps taken by AST to corroborate the tipster's anonymous information. Ingram's work within the human trafficking unit caused him to be familiar with "Tayla Jones" and know her as a convicted prostitute. *Id.* at 8. Additionally, the Anchorage Police Department's

records management system listed the number 907-717-8757 as belonging to Keenan Weldon Smith. *Id.*

On March 19, 2018, Sgt. Ingram drove to the Arctic Tern Inn in Anchorage. *Id.* at 8. In the parking lot, he noted a black 2002 Subaru Legacy sedan with a rear broken window and no tire tracks leading away from the vehicle, suggesting that it was inoperable. *Id.* Ingram's Alaska Public Safety Information network (APSIN) search of the vehicle's plates showed it to be registered to Tristin Donahue and not to Keenan Smith. *Id.* Finally, Ingram went inside the Arctic Tern Inn and spoke with the front-desk clerk, who confirmed Smith resided in room 116 and had for several months. *Id.*

On March 20, 2018, another investigator assigned to Ingram's unit, David DeCoeur, conducted surveillance of the Arctic Tern Inn. (Doc. 29-1 at 8.) Investigator DeCoeur observed a black male drive a blue Oldsmobile Intrigue into the parking lot of the Arctic Tern Inn and park.[1] *Id.* Investigator DeCoeur expressed 70% certainty that the driver was the defendant. *Id.*

Finally, in support of his application, Sgt. Ingram pulled Smith's criminal history. *Id.* That history included four Alaska state drug convictions more than ten years old, and a California conviction for pimping nearly thirty years old. *Id.* The

---

[1] Sgt. Ingram's affidavit reasons from the sergeant's experience that an Oldsmobile Intrigue could be mistaken for the Oldsmobile Alero that the anonymous tipster identified Smith as sometimes using. (Doc. 29-1 at 8.) The mistaken vehicle model is not the only discrepancy, however. The affidavit continues, "the plate the tipster gave for the blue Oldsmobile . . . actually did not return to a car at all, it was registered to a pickup truck." *Id.*

*United States v. Smith*
3:18-cr-00112-TMB-DMS
Final Report and Recommendation re Motion to Suppress                                        4
Case 3:18-cr-00112-TMB-KFR   Document 56   Filed 03/06/19   Page 4 of 17

history noted only two convictions occurring in the past ten years, for leaving the scene of a crash and driving without a license. *Id.*

## 2. Second Tip by Confidential Informant

The second tip was received from a confidential informant developed by AST in an earlier drug investigation targeting Smith in April of 2017. (Doc. 29-1 at 8.) The informant claimed in 2017 that he/she could buy crack cocaine from Smith and had done so in the past, according to Ingram's affidavit. *Id.* However, the investigation had stalled when the informant was unable to set up a deal. *Id.* Sgt. Ingram's affidavit does not include any information establishing the informant's credibility or the basis of the informant's knowledge.

## 3. Anonymous Third Tipster

The third tipster anonymously provided Anchorage Crime Stoppers with information about a different drug and prostitution ring in Anchorage. (Doc. 29-1 at 9.) On January 31, 2018, the tipster claimed knowledge that Keenan Smith was an accomplice of the tip's target and a drug supplier for that organization. *Id.* at 9. The tipster also provided a phone number for Smith of 717-8757. *Id.* Sgt. Ingram's affidavit does not provide any information otherwise establishing the tipster's credibility or the basis of the anonymous tipster's knowledge.

### B. Warrant 3AN-18-883 SW

On March 22, 2018, Investigator DeCoeur applied for and received warrant 3AN-18-883 SW to search the cell phones and SIM card that AST collected when

executing its earlier warrant to search Mr. Smith's room. Doc. 29-2, Application for Warrant 3AN-18-883 SW at 1, 21.

In support of the application, Investigator DeCoeur's affidavit described substantially the same information that Ingram's affidavit had used to secure the Arctic Tern search warrant. (Doc. 29-2 at 16-19.) DeCoeur's affidavit also described the fruits of the room search—a Colt revolver, various types of ammunition, several cell phones, and a SIM Card. The affidavit also described the appearance of two women found with Smith in room 116 as that of "person[s] addicted to illicit substances [as identifiable] by [their] gaunt face[s]." *Id.* at 19. One of these women had posted numerous escort ads on websites used for prostitution but apparently had no convictions. *Id.*

## III. DISCUSSION

### A. Probable Cause

The Fourth Amendment guarantees the right to be secure against unreasonable search and seizure unless a warrant issues supported by probable cause. U.S. Const. amend. IV.

Where information supplied by anonymous tipsters is to serve as the basis of probable cause, the issuing magistrate should look to the totality of the circumstances—including the "basis of knowledge" of the persons supplying hearsay information—in determining whether sufficient probable cause exists. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). To this end, a known informant's tip may be more reliable than an anonymous informant's tip. *Florida v. J.L.*, 529 U.S. 266, 270

*United States v. Smith*
3:18-cr-00112-TMB-DMS
Final Report and Recommendation re Motion to Suppress                                                    6
Case 3:18-cr-00112-TMB-KFR   Document 56   Filed 03/06/19   Page 6 of 17

(2000). Nevertheless, police work may corroborate an anonymous tip sufficiently for the tip to serve as the basis for probable cause. *See Gates*, 462 U.S. at 238; *Florida v. J.L.*, 529 U.S. at 270; *United States v. Luong*, 470 F.3d 898, 903 (9th Cir. 2006).

For an anonymous tip to be considered reliable enough to serve as the basis for probable cause, it must meet three criteria: (1) it must include a "range of details,"; (2) it must "predict future actions" by the suspect; and (3) those future actions must subsequently be corroborated by the police. *Luong*, 470 F.3d at 903; *United States v. Morales*, 252 F.3d 1070, 1075 (9th Cir. 2001). "Mere confirmation of innocent static details in an anonymous tip does not constitute corroboration." *Luong*, 470 F.3d at 903 (quoting *United States v. Clark*, 31 F.3d 831, 834 (9th Cir. 1994)).

1.  **The First Warrant, 3AN-18-863 SW, Was Not Supported by Probable Cause.**

A review of Sgt. Ingram's affidavit shows that the warrant was not supported by probable cause. Sgt. Ingram based his application for the warrant on information from two anonymous tipsters and a confidential informant. *See* Doc. 29-1 at 7-9.) Accordingly, the application must provide the "'basis of knowledge" of the persons supplying hearsay information. *See Gates*, 462 U.S. at 238. Aside from corroborating certain details provided by the first tipster, and explaining that the second tipster was a confidential informant who had been unable to close any drug deal with the defendant in another investigation, Sgt. Ingram's affidavit does not establish the tipsters' credibility or the basis of their knowledge. It does not, for instance, state

*United States v. Smith*
3:18-cr-00112-TMB-DMS
Final Report and Recommendation re Motion to Suppress                                                    7
Case 3:18-cr-00112-TMB-KFR   Document 56   Filed 03/06/19   Page 7 of 17

whether each tipster acquired his or her information through first-hand, second-hand or even third-hand knowledge.

Additionally, this Circuit's precedents make clear that an anonymous tip must meet three criteria to be considered reliable enough to serve as the basis for probable cause: (1) it must include a "range of details,"; (2) it must "predict future actions" by the suspect; and (3) those future actions must subsequently be corroborated by the police. *Luong*, 470 F.3d at 903. None of the information provided by any of the tipsters here predicted Smith's future actions. In *Gates*, for example, an anonymous letter predicted the specific date defendants would fly from Chicago to Florida before driving back to Illinois in a car loaded with drugs. 462 U.S. at 225. Police subsequently surveilled defendants doing precisely that. *Id.* at 226-27. At most, the anonymous tips here might be said to have "predicted" that Smith would sell drugs out of his apartment.

AST's police work, however, failed to corroborate this critical assertion. Upon driving to the Arctic Tern Inn, Sgt. Ingram was able to identify a black sedan consistent with the tipster's information and verify Smith's residence in room 116. *See* Doc. 29-1 at 7-8. Investigator DeCoeur's follow-up surveillance the next day confirmed with 70% certainty that it was Smith who arrived driving a blue vehicle similar to the one described by the tipster. *Id.* at 8. AST also confirmed Smith's phone number as the one identified in the tips and confirmed Smith's active warrant. *Id.* at 8. None of these corroborated details, however, evidence drug dealing. Instead, they constitute "easily observed facts and conditions" available to

any disgruntled neighbor or ex-lover who potentially wished to cause Smith trouble. *See Morales*, 252 F.3d at 1076. While AST's police work corroborated a number of details from the anonymous tips; critically, it did not show that Smith sold drugs from the black sedan or his personal apartment. It did not corroborate any predictions of future actions or travel of Smith.

During oral argument, the government repeatedly commended to this Court's attention the 2015 case *United States v. Sabedra*, 2015 WL 926030 (D. Haw. March 4, 2015). The government argued the case should guide this Court's determination of whether sufficient probable cause existed to support the warrant. A review of *Sabedra* reveals several reasons why it should not.

The unpublished District Court decision is distinguishable from the instant matter. Probable cause in *Sabedra* was based only <u>in part</u> upon an anonymous Crime Stoppers tip. Unlike Sgt. Ingram's affidavit, the *Sabedra* affidavit included <u>several additional sources of evidence</u>, including: (1) statements from two confidential informants involved in two previous methamphetamine arrests of the defendant; (2) statements from other defendants involved in one of those two cases; (3) pictures and phone numbers retrieved from a cell phone obtained as a result of one of those arrests; (4) statements made by an alleged co-conspirator; and (5) law enforcement surveillance corroborating this other evidence. *Sabedra* at *2.

In fact, the court in *Sabedra* repeatedly made clear that "the Crime Stoppers tip sheet . . . *by itself*, would not have established probable cause to search the premises." *Id.* at *7 (emphasis in original); *see also* at *9 ("Although the Crime

*United States v. Smith*
3:18-cr-00112-TMB-DMS
Final Report and Recommendation re Motion to Suppress                                                          9
Case 3:18-cr-00112-TMB-KFR   Document 56   Filed 03/06/19   Page 9 of 17

Stopper's tip sheet *alone* is entitled to little weight, probable cause exists under the *totality* of the circumstances . . . considering *all* the evidence referred to in [the agent's] Affidavit" (emphasis in original)). Even with this additional evidence, the *Sabedra* court characterized its finding of probable cause was a "close" one.

Even when considered alone, the anonymous Crime Stoppers tip in *Sabedra* compares unfavorably with the tips here. Notably, law enforcement in *Sabedra* was able to independently confirm that a white Chrysler 300 was registered to the defendant at the address, that the defendant's cell phone number was linked to an earlier methamphetamine bust following the same *modus operandi,* and both confidential informants linked the defendant's address to drug activity. *Id.* at *7. Each of these independent corroborations bolstered the credibility of the anonymous tip that the defendant was involved in illegal activity. In contrast here, AST police work showed that the black sedan referenced by the tip was not registered to Smith and the blue sedan was a different model than the one the tip had identified. *See* Doc. 29-1 at 7-9. Although AST also confirmed Smith's phone number and his address at the Arctic Tern Inn, these innocent static details fail to link Smith with narcotics trafficking in the same way that the police work linked the defendant in *Sabedra*. *See Luong*, 470 F.3d at 903. Accordingly, the government's comparison to *Sabedra* is ill-suited to its case against Mr. Smith.

Information from anonymous tips, standing alone, present serious credibility issues and therefore require corroboration by independent police work. *See Gates*, 462 U.S. at 238; *Luong*, 470 F.3d at 903. Because the anonymous tips here did not

*United States v. Smith*
3:18-cr-00112-TMB-DMS
Final Report and Recommendation re Motion to Suppress                                                    10
Case 3:18-cr-00112-TMB-KFR   Document 56   Filed 03/06/19   Page 10 of 17

predict any future action, and because "[m]ere confirmation of innocent static details in an anonymous tip does not constitute corroboration," *Luong*, 470 F.3d at 903, the Court finds that issuance of the warrant was not supported by probable cause.

## 2. The Second Warrant, 3AN-18-883 SW, Was Not Supported by Probable Cause.

Where evidence is obtained through illegal means, and the government cannot claim any alternative legal means to the same evidence, the evidence and all evidence derived therefrom is "fruit of the poisonous tree" and may not be used against the defendant. *Wong Sun v. United States*, 371 U.S 471, 487-88 (1963); *United States v. Gorman*, 859 F.3d 706, 716 (9th Cir. 2017).

Search warrant 3AN-18-883 SW was issued based upon substantially the same information used to secure underlying warrant 3AN-18-863 SW. Because this information was insufficient to establish probable cause for warrant 3AN-18-863 SW, it is likewise insufficient to establish probable cause for warrant 3AN-18-883 SW.

Additionally, warrant 3AN-18-883 SW was issued based in part upon the fruits of the search authorized by underlying warrant 3AN-18-863 SW. Because the underlying warrant authorizing that search was not supported by probable cause, the search was illegal, and its fruits may not serve as a basis for probable cause. *See Wong Sun*, 371 U.S. at 487-88; *Gorman*, 8599 F.3d at 716. Accordingly, this second warrant also lacks probable cause.

*United States v. Smith*
3:18-cr-00112-TMB-DMS
Final Report and Recommendation re Motion to Suppress                                    11
Case 3:18-cr-00112-TMB-KFR   Document 56   Filed 03/06/19   Page 11 of 17

## B. The *Leon* Good Faith Exception

Where a search is not supported by probable cause, fruits of the search may nevertheless be admissible if the searching officer acted in good faith reliance upon a warrant. *United States v. Leon*, 468 U.S. 897, 920-21 (1984); *United States v. Henderson*, 906 F.3d 1109, 1117-18 (9th Cir. 2018). The test of good faith is an objective one. *Luong*, 470 F.3d at 902. A reviewing court should ask not what the executing officer believed or could have believed, but "whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* (quoting *Leon*, 468 U.S. at 922). Alternatively, courts may ask whether an officer's affidavit is "sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause." *Id.* (quoting *Leon*, 468 U.S. at 926); *see also United States v. Tate*, 795 F.2d 1487, 1490-91 (9th Cir. 1986); *United States v. Hove*, 848 F.2d 137, 139-40 (9th Cir. 1988).

The Ninth Circuit has refused to apply the good faith exception to a search where the underlying affidavit was "entirely lacking in indicia of probable cause." *Luong*, 470 F.3d at 904; *see also Hove*, 848 F.2d at 139-140 (where affidavit simply listed an address as location to be searched without providing any information linking the location to the defendant or to incriminating evidence).

However, this Circuit has also held that information in an affidavit that is insufficient to support probable cause may nevertheless support application of the good faith exception. *United States v. Gilton*, No. 16-10109, slip op. at  (9th Cir. March 4, 2019); *United States v. Huggins*, 299 F.3d 1039, 1044-46 (9th Cir. 2002)

*United States v. Smith*
3:18-cr-00112-TMB-DMS
Final Report and Recommendation re Motion to Suppress                                    12
Case 3:18-cr-00112-TMB-KFR   Document 56   Filed 03/06/19   Page 12 of 17

(affidavit seeking cell-site location information from Gilton's cell phone lacked probable cause but *Leon* good-faith exception applied); (applying the good-faith exception to thermal-imaging search of home for marijuana-growing operation where affidavit presented (1) tip from an "untested" prisoner-informant who had last spoken to the defendant three years prior; (2) corroboration of details unrelated to criminal activity; (3) information about defendant's past arrests; (4) property's electricity consumption data); *United States v. Clark*, 31 F.3d 831, 835-36 (9th Cir. 1994) (applying good faith exception where affidavit was based on (1) two anonymous letters that merely alleged the defendant was associated with a marijuana fugitive; (2) corroboration of details unrelated to criminal activity, general facts about marijuana growing and related electricity consumption; and (3) defendant's electricity consumption, and noting that "[t]he electricity usage was insufficient to establish probable cause, but it was not irrelevant to that determination").

The good faith exception does not apply, however, where (1) an affiant misleads the issuing magistrate by making a false statement or recklessly disregarding the truth; (2) the magistrate wholly abandons her judicial role in approving the warrant; (3) the warrant is facially deficient in detail as to the place to be searched or the things to be; or (4) the affidavit upon which the warrant is based is so lacking in indicia of probable cause that no reasonable officer could rely upon it in good faith." *United States v. Crews*, 502 F.3d 1130, 1136 (9th Cir. 2007); *Leon*, 468 U.S. at 923-26. The government bears the burden of proving that the

*United States v. Smith*
3:18-cr-00112-TMB-DMS
Final Report and Recommendation re Motion to Suppress                                        13
Case 3:18-cr-00112-TMB-KFR   Document 56   Filed 03/06/19   Page 13 of 17

good-faith exception should apply. *Leon*, 468 U.S. at 924 ("When officers have acted pursuant to a warrant, the prosecution should ordinarily be able to establish objective good faith without a substantial expenditure of judicial time.")[2]

As discussed above, information supporting the first warrant and resulting from its execution served as the entire basis for probable cause in officer DeCoeur's application for the second warrant. Therefore, the Court first considers only whether the good faith exception should apply to the first warrant.

1. **Should the Good-Faith Exception Apply to Evidence Obtained Under the First Warrant?**

Although the decision is a close one, the Court concludes that AST's officers acted in objective good faith reliance upon the first warrant when they executed their search. Sergeant Ingram's affidavit, which supported application of the warrant, was not so lacking in indicia of probable cause as to make reliance upon it unreasonable. *See Crews*, 502 F.3d at 1136.

The affidavit cited not one but three tipsters who alleged that Smith was engaged in illegal activity related to the drug trade. The first of these provided a wide range of details, many of which—including Smith's residence in apartment #116 of the Arctic Tern Inn, his phone number, his driving a blue Oldsmobile sedan, the presence of an inoperable black sedan in the Inn's parking lot, and the criminal

---

[2] At least one Ninth Circuit case has allowed the government to present extrinsic evidence to meet this burden. *See United States v. Mendonsa*, 989 F.2d 366, 369-70 (applying the good-faith exception based in part upon the officer's testimony at trial that an attorney had advised him his affidavit appeared complete). Although the government in this case declined to ask Sgt. Ingram to testify, the Court notes that it would have allowed such extrinsic evidence in considering whether an objectively reasonable officer would have relied upon the warrants here.

*United States v. Smith*
3:18-cr-00112-TMB-DMS
Final Report and Recommendation re Motion to Suppress                                    14
Case 3:18-cr-00112-TMB-KFR   Document 56   Filed 03/06/19   Page 14 of 17

history of alleged associate "Tayla Jones"—were corroborated by independent police work.

Although two of the tips Ingram received were anonymous, the third came from an informant developed by AST in an earlier investigation targeting Smith in April of 2017. The reliability of this informant, who was unable to close the deal he or she claimed to be able to make with Smith, is not unlike the "untested" prisoner-informant whose tip supported application of the good-faith exception in *Huggins*. 299 F.3d at 1046.

Additionally, while the Ninth Circuit has identified three criteria anonymous tips must meet if they are to serve as the basis for probable cause, *see Luong*, 470 F.3d at 903; *Morales*, 252 F.3d at 1075, it has also upheld anonymous tips as the basis for application of the good-faith exception even where the tips fail these criteria. *See Clark*, 31 F.3d at 835-836. Here, as in *Clark*, the anonymous tip was insufficiently corroborated to support probable cause. *Id.* at 834-35 (citing to *Mendonsa*, 989 F.2d at 369 for the principle that "[m]ere confirmation of innocent static details in anonymous tip does not constitute corroboration"). Nevertheless, in *Clark* the Ninth Circuit went on to hold that the affidavit was not so facially deficient and that an objectively reasonable officer could not have relied upon it in executing a warrant. 31 F.3d at 835-36.

So too, here, the Court finds that Sgt. Ingram's affidavit was not so facially deficient that an objectively reasonable officer would have known the search was illegal. *See Luong*, 470 F.3d at 902. Likewise, reasonable magistrates, possibly

*United States v. Smith*
3:18-cr-00112-TMB-DMS
Final Report and Recommendation re Motion to Suppress                                    15
Case 3:18-cr-00112-TMB-KFR   Document 56   Filed 03/06/19   Page 15 of 17

unfamiliar with the strict criteria set out in the *Morales/Luong* line of cases, could disagree over whether the affidavit showed probable cause. *See id*. Accordingly, the good faith exception applies and the evidence need not be suppressed.

Nevertheless, the Court notes that it is troubled Sgt. Ingram did not do more to establish the credibility of AST's informant. In the future, law enforcement ought to go to greater lengths to corroborate information obtained from anonymous and even unnamed sources.

### 2. Should the Good-Faith Exception Apply to Evidence Obtained Under the Second Warrant?

The second warrant based its probable cause upon the first warrant and the fruits of the first search. Because the good-faith exception applies to the first search, AST's officers also acted in objective good-faith reliance when they executed the second warrant, and the exception should apply. Accordingly, evidence obtained as a result of the second search need not be suppressed.

### IV. CONCLUSION

Based on the foregoing, this Court respectfully recommends that Defendant Smith's Motion to Suppress be DENIED.

DATED this 6th day of March, 2019 at Anchorage, Alaska.

*Deborah M. Smith*
CHIEF U.S. MAGISTRATE JUDGE

Pursuant to D.Ak.L.M.R. 6(a), a party seeking to object to this proposed finding and recommendation shall file written objections with the Clerk of Court no later than **CLOSE OF BUSINESS, MARCH 20, 2019**. Failure to object to a magistrate judge's findings of fact may be treated as a procedural default and waiver of the right to contest those findings on appeal. *Miranda v. Anchondo, et. al*, 684 F.3d 844 (9th Cir. 2012). The Ninth Circuit concludes that a district court is not required to consider evidence

*United States v. Smith*
3:18-cr-00112-TMB-DMS
Final Report and Recommendation re Motion to Suppress                    16
Case 3:18-cr-00112-TMB-KFR   Document 56   Filed 03/06/19   Page 16 of 17

introduced for the first time in a party's objection to a magistrate judge's recommendation. *United States v. Howell*, 231 F.3d 615 (9th Cir. 2000).

Objections and responses shall not exceed **five (5) pages** in length, and shall not merely reargue positions presented in motion papers. Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support. Response(s) to the objections shall be filed on or before **CLOSE OF BUSINESS, MARCH 27, 2019.** The parties shall otherwise comply with provisions of D.Ak.L.M.R. 6(a).

Reports and recommendations are not appealable orders. Any notice of appeal pursuant to Fed.R.App.P. 4(a)(1) should not be filed until entry of the district court's judgment. *See Hilliard v. Kincheloe*, 796 F.2d 308 (9th Cir. 1986).

*United States v. Smith*
3:18-cr-00112-TMB-DMS
Final Report and Recommendation re Motion to Suppress                                    17
Case 3:18-cr-00112-TMB-KFR   Document 56   Filed 03/06/19   Page 17 of 17